And we will now call our case for today, Tima v. Sessions. Mr. Archambeau. Thank you. May it please the court. My name is Matthew Archambeau, and I am the attorney for the petitioner, Mr. Gordon Tima. I just request two minutes for rebuttal. Done. Thank you. The reason that we are here today is to determine if the 237A1H waiver or the 8 U.S.C. 1227A1H waiver served to waive a criminal ground of immovability that directly resulted from fraud at the time of Mr. Tima's admission to the United States as an awful permanent resident. Right. And we are with you on that. We have taken a look briefly. We understand that that is the issue in front of us. And the question I would like you to tackle first, if you would, is why is the 9th Circuit and the 7th Circuit, 6th, why are they all wrong in understanding this? I would love a hanging paragraph to refer only to A1 of 1227 instead of the conviction involving moral turpitude that your client is dealing with under A2. Thank you, Your Honor. First of all, I don't believe that the 6th Circuit really considered the hanging paragraph. In the 7th Circuit in Gorsh, there was a different issue. It's A3. But it's still an analysis under Gorsh that says, hey, Congress passes these laws, sets them out in a hierarchical fashion. When it says this paragraph, it means this paragraph, A1. And we're dealing with A3 in this case, so done. Doesn't that apply just as much when you're dealing with an issue of A2 as if you were, as in Gorsh, you were dealing with an issue under A3? Well, I just don't believe that they, that that decision really reached the hanging paragraph that we're speaking of. This Court has, in the matter of Kazun, we talked about that we have to give full effect to the statute. When you talk about Kazun, the Attorney General from this Court last year, they have to give full effect to the statute. And the statute does start off with the provisions of the paragraph. But also, it comes down to the hanging paragraph, which talks about, and I'd like to read it, it talks about waiver of fraud or misrepresentation. Granted, this subparagraph shall also operate to waive removal based on the grounds of inadmissibility. Right. And if you don't like Gorsh and think it doesn't do it, Taggart pretty directly tackles it, doesn't it? Well, I think Taggart is, Your Honor. I'm sorry. I do believe they misapply the whole paragraph. Because what Taggart seems to be saying, and also a matter of foo from the BIA, that Congress exempted paragraphs 5A and 7A from consideration if someone was found inadmissible under those. However, in one paragraph, and then in the next paragraph, Congress fixes that. It seems like an absurd result that Congress would exempt two things, and in the very next paragraph, leave an exception for them, a removability thing for them. Why would it be odd for Congress to say, as it does right at the start of A1, if I'm reading it right, that this was, they're dealing here with people who were inadmissible at the time of admission. And that's what they're talking about, and that's what they're trying to deal with. And everything is to be read in light of that understanding. And when you start talking about things like a conviction for a crime involving moral turpitude, you're no longer talking about somebody inadmissible at the time of admission. You're dealing with somebody who has become deportable, a different category of alien altogether. Why isn't that a logical thing for Congress to do, and then to read the waiver in light of that? Well, I think you have to read the waiver as a whole, because when we get down to the hanging paragraph, it talks about it also operates to waive removal based on this ground of inadmissibility. The conviction for marriage fraud is directly resulting from the fraud that made him inadmissible. Okay, so I think we can agree that the provisions of this paragraph and the head paragraph are referring to A1. The other circuits are right on that. Your point is, the hanging paragraph doesn't have the same limitation as the head paragraph. But the hanging paragraph has several other limitations in it, which is, shall also operate to waive not removability, waive removal. And the removal has to be based on grounds of inadmissibility. But the crime involving moral turpitude is a ground of removability, not a ground of inadmissibility. So it doesn't seem to reach beyond the A1 grounds of inadmissibility. You're complaining about a problem that comes under A2, A1, which is about deportability. I do believe that we're asking that the ground of removability, that the ground of removal, be waived. It doesn't say ground of removal, it says ground of inadmissibility. The ground of inadmissibility is a 212A6C, that he was not eligible for his admission into the United States based on his fraud. That's not the ground that's asserted. That's why I think we're talking in a little bit of a circle here. You say, yeah, it was based on the marriage fraud. But what I understand Judge Bevis to be asking, what I was trying to ask also, is that A1 is limited to aliens inadmissible at the time of admission. That's the way it's set up. And the hanging paragraph picks that up by talking about inadmissibility, not about removability, not about grounds to be removed because you're deportable under another subsection. So why isn't even the language of the hanging paragraph referring you back up into A1 and telling you don't be looking at A2, A3, A6, whatever other subsection there is? Well, I do believe that if you look at it this way, the way that the government puts it, the hanging paragraph would have no effect because everything else that is waivable under the A1 paragraph is waived before you even get down to the hanging paragraph. Let me suggest an effect that it would have. The statute is set up as two sections. 1182 has a series of grounds for inadmissibility that then plug into grounds for inadmissibility that are in 1227A1. Looks to me like the head paragraph of 1227A1H says you can waive these other grounds that are in 1227A1. The provisions of this paragraph. And then the hanging paragraph looks like it's referring back to the grounds of inadmissibility that are spelled out in 1182. So it's not surplusage. If you bring a two-count of removability that you weren't authorized to come in and you had fake work papers when you came in, these two paragraphs work in tandem to waive both of them. Well, obviously it's not the way I read it. Yes, indeed. But why should we not read it that way? Why should we not understand that the arc of the statute, and I think there's been amendments over time that would demonstrate that Judge Bevis' reading of that is pretty strong. Why would we not think of it in terms of that hanging paragraph doing the work of taking us back out to the referred section and saying those things too? Well, I just think that's all accomplished before you can get to the hanging paragraph. And one clue that I think is one thing that is in the first paragraph they talk about aliens under 4D. It's your best argument. Please, tell us. Thank you. It's a clue that Congress expects that this waiver to perform outside of A1 because what would the point of including the A4D in there? There would be no – if we read it the way that the government is reading it, that would be subterfuge. I think the point seems to be that in the old version of the statute, there were a bunch of removability and instability grounds sprinkled throughout 1251. When they recodified, they put most of the removability grounds in A1. But if it's limited to this paragraph A1, why are we reaching out to A4D, which is a removability ground that's not part of this paragraph? It seems the government pretty much has to say this looks like it's some kind of codification error, cross-reference, or maybe if Nazi is otherwise qualified. But it takes some gymnastics to avoid making this surplusage. I think that's a good point. But there's other surplusage that's in this paragraph, too, like this reference to willful or innocent misrepresentations. Well, you follow the cross-reference to 1182A6C1, those grounds are only willful grounds anyway. So the willful or innocent looks like a problem of a statute that had different pieces slapped together that didn't completely fit. How does your reading work? Does your reading suggest that because of the A4 reference, we have to ignore the provisions of this paragraph and say anything anywhere in 1227 has to be covered to avoid making A4D surplusage? Well, I do. Well, if it relates to the fraud, if it's directly resulting from this fraud or misrepresentation. For example, a conviction for bank robbery, for example, would obviously not be resulting from the fraud and misrepresentation, and 237A1H certainly wouldn't cover that. Our argument is that the conviction for the marriage fraud is part and parcel. It's all tied in together with the fraud. So it seems to me the government can effectively nullify the effect of the fraud waiver under A1 simply by bringing a CMIT charge based on the sham marriage. Well, that's what happened. I think when you see an acqua, and if I'm saying it wrong, I apologize, in the Seventh Circuit that recently dealt with that issue, the individual that committed marriage fraud maybe once or twice and had a whole bunch of other fraudulent issues, but he was never prosecuted for that. That's the only difference between him and my client. It looks like he'll be eligible for 237A1H. My client was never prosecuted. Isn't that inherent in the prosecutorial discretion of the Attorney General? If the Attorney General chooses not to exercise his discretion under A1 or chooses to charge a CIMT under A2, what difference does it make? The person is still removed, right? Well, I think the difference is that if anyone who commits marriage fraud has violated 8 U.S.C. 1001, it's inherent. But they don't have to be charged. Well, exactly. They don't have to be charged, but we're looking at – I mean, the difference is someone who's not charged can get 237A1H. Someone who's not, like my client who's been here for 30 years, married to a U.S. citizen, had 3 U.S. citizens. You're taking any argument out of me, Mr. Archibald, that there's something in our immigration system that could make a person go from time to time in the way the government chooses to exercise its discretion. But that's not really in front of us right now. They did choose to exercise their discretion in the sense that they decided to charge your client with a crime involving moral turpitude based on the fraud. Having done that, your complaint seems to be that that undermines or would destroy the fraud waiver. And the question I was trying to put to you is, since it's a discretionary waiver to start with, what is it as a policy or other legal matter that's problematic about the attorney general saying either, I'm not going to exercise my discretion, you're gone, or I've charged you with a CIMT and that's different, you're gone. Because either way, you're gone. I understand your point. It's really not a point. That's a legitimate question. You seem to be making an argument that to read the hanging paragraph as being defeated by an A2 kind of a charge is somehow inconsistent with the intent of the statute. And I'm asking you why you think that's so, since it's inherently a discretionary waiver and the attorney general's got power to exercise prosecutorial discretion or discretion not to grant the waiver. Either way, it's discretionary, right? You're correct, but I think when you look at IADS v. Enrico, which looked at the predecessor with the conventional intent. All pre-amendments, right? It was put back when it was mandatory and not discretionary, right? Exactly. But I still think their analysis of what the congressional intent was for this waiver being humanitarian, in fact, and to give a broad effect. There's another problem, though, which is now we're in a scheme where Congress has chosen to put multiple waivers in different places in what is now 1227. And you seem to want to take the waiver from A1 and take it over to A2A1, which has its own waiver provision. It looks like Congress made some decisions about what the conditions would be for waiving certain crimes. Some crimes are waivable under A2A. Others are not, so the controlled substances and firearms offenses are not subject to that waiver provision. And yet your logic would seem to sweep a bunch of other things into this A1H waiver by extending it to the whole section. It's at least intentionally the way the section is structured. Well, it's not my intention to say a whole bunch of other things. It would be this type of offense that is directly resulted from the fraud that the individual committed. So it's a very narrow subset. Okay. And I see I've gone way over time. But even if it's ambiguous, you still have to deal with Chevron. Right. Well, I don't think it's ambiguous. I mean, I think when you look at the congressional intent and the plain text. The fact that we're talking about this for 15 minutes indicates there's some ambiguity. Isn't there always ambiguity? There is. All right. I can't get by ambiguity in my life. But thank you, Donner, and thank you for allowing me to spend more time with you. All right. Thanks, Ms. Horsham. But we'll have you back on rebuttal. Ms. Melnick. May it please the Court. Karen Melnick on behalf of the United States. We would ask this Court to follow the plain language interpretation that the Sixth, Seventh, and Ninth Circuits, as well as a panel of this Court, have all agreed that the proper interpretation for this statute is that 122781H only applies to this paragraph. Mr. Tima. Yeah. Let's get your head right into the point here that your opponent is making, which is you are effectively nullifying this paragraph because the government can always charge a CIMT, which actually does shift where the discretion is going to lie. It's going to move it from the agency, the BIA and those authorities, to prosecutorial authorities. That's not something one would expect or anticipate. Could you just take that on directly, would you? Sure. I mean, they can't always charge a CIMT if there isn't one. In this case, as a separate, distinct and legal ground, people who commit fraud in applying for adjustment, as Mr. Tima did, can't, aren't always. Forgive me. A marriage fraud. What we're dealing with here, a marriage fraud kind of case, like we're dealing with here, by definition, you would be subject to a 1001 prosecution, right? You'd be subject to it, perhaps, yes. Yeah. And I understand the argument to be, well, Congress really couldn't have meant to make it that easy for the waiver to be effectively nullified because if you've got a marriage fraud and it can always be charged as a crime involving moral turpitude, what's the point of having a waiver? That's what I understand Mr. Archibald's argument to be. He just said it a lot better than I did, but that's what I'd like you to take on, if you would. Well, our position is that the conviction has, that there are consequences to that conviction that are just simply, that Congress accounted for, which is not covered by this waiver. I mean, I'm not disagreeing that everyone who may, you can be convicted of 18 U.S.C. 1001 without it being marriage fraud. There's nothing about immigration or marriage in 18 U.S.C. 1001. It's a distinct legal ground of deportability. And the issue here is whether or not that, and I think Judge Bevis kind of articulated it better than I am actually at the moment, that it's accounted for. But I think what your adversary is driving at is something about the hanging paragraph. She'll also operate it to waive removal. Let's assume that removability is not a meaningful distinction. Based on, his argument is, well, the conviction is based on the ground of indemisability, based on the fraudulent marriage representations he had to make as a part of it, directly resulting from such fraud and misrepresentation. How does the government suggest we read these words based on and directly resulting from? It's an intuitive point Mr. Archambault makes that his conviction for the 1001 CIMT is, it's based on the marriage fraud. It directly results from it. It was very predictable that it came out of it. So what's your response to how we should read those causal words? Well, counsel would like you to read these words based on waived grounds of indemisability, essentially out of the paragraph. I mean, it goes to simply what it says, plain meaning, grounds of indemisability. It refers back to those things, those grounds of indemisability that might also be charged as a result of the initial fraud or misrepresentation, other grounds of indemisability. A5A had to do with labor certifications. 7A had to do with not having travel documents. Those are the things. As Your Honor suggested, it covers those other grounds. It simply doesn't say grounds. It doesn't say waived grounds of deportability. It doesn't say waived grounds of convictions that are related to the initial fraud or misrepresentation. It goes to grounds of indemisability related to that initial. The problem with this argument, though, is the Nazi ground in A4D is not a ground of indemisability. It's a ground of deportability, and it's not in this paragraph. It's in a different paragraph. Well, I think the Nazi, there's one in 1182 as well for indemisability, and that section is simply saying even if you made a misrepresentation on your, you know, a fraud or misrepresentation when it came time for your admission, if you are either inadmissible or deportable based on Nazi torture, genocide, the Attorney General does not even exercise discretion. He can't. So that accounts for that. Can you get a little bit into your argument that if we were to adopt the petitioner's view here, we would get crosswise of the categorical approach that we're supposed to apply otherwise in these cases? Well, the categorical approach wouldn't advance his argument at all because... I understood you'd argue it's indeed contrary to it, right? Well, 18 U.S.C. 1001 would be a categorical crime involving moral turpitude, and it doesn't, again, deal with marriage fraud or immigration. So even we're saying it doesn't apply, but even if it did, it doesn't advance his argument at all in any event. You don't want us to look at the facts underlying the conviction? No. When it says based on the grounds directly resulting, that sounds like it's calling on us to look at those facts. Well, it still, again, would be reading out grounds of inadmissibility. It's still that you can't get over the fact of the conviction. It really comes down to that. There's no waiver that, this waiver or any other, that would allow Mr. Tima to adjust status. And that's the bottom line. The A2-A6 waiver would let him do that. Pardon? I'm sorry? You said there's no waiver to let him do that. I actually think there is a waiver in A2-A6, waiver authorized, if he gets a pardon. So I thought the argument was this is a wrong waiver for him, not that there's no waiver that could do it. Well, the only waiver that he's seeking before this court is 1227-A1-H. And based on the plain reading of the statute, again, of the other circuits, which your honors have already discussed, he is not eligible. It's a plausible argument, except when you were talking about the Nazis, you slipped into saying it is inadmissible or deportable on those grounds. And if you have to fudge inadmissibility and deportability to make sense of the Nazis, then suddenly that opens the door for Mr. Archambault's argument to an extent. Well, I don't think so. I think that what the statute is saying is that if you are removable on that ground, the attorney general simply just doesn't have discretion to grant it. So it's just a non-starter. It's different in kind because the discretion is removed at that point?  Okay. Thank you. Thanks. Judge Archambault, you're final please. Thank you, your honor. And I just wanted to address what I believe you were asking my colleague about with the math is to camp and Moncrief and the board said that even if we were to get there, that an immigration judge wouldn't be able to look at the underlying facts. I think it's... As a practicing immigration attorney, I would love to be able to go for most of my clients that we're doing cancellation for and all that and tell the immigration judge, okay, he qualifies statutorily, that you can't look at the underlying facts for discretion. That would be a wonderful thing for most of my cases. But here, CFR 1240-1004, I'm sorry, 1240-08, D, the applicant, we always have the burden to show that we're eligible for relief, that we're eligible for the waiver. So in order to be able to show that we're eligible for this waiver, we're going to have to tie that conviction in to say that it's directly resulting from the fraud. I'm not sure I'm following you. I apologize to my colleagues if we go a little bit past the red light here. I understood their argument to be, Moncrief, et cetera, the categorical approach tells us you don't get to look at what's going on underneath that 1001 conviction because once you do that, you're starting to look at questions that are fact-bound, and you shouldn't be doing that. You should only be able to look and say, is this a crime involving moral turpitude or not? Game over. Maybe I misunderstood them, but I thought that's what they were arguing. I'll be honest. I'm not exactly sure. But what I know is that when we're in immigration court, we determine if the person is removable or not. And that's where Moncrief, the camp, and Mathis all come in. Are they removable? Once the ground of removability is found, then we move on to relief. The 237A1H is relief. Then we have to tie it in with the facts. To follow your line of reasoning, in order to be able to say the hanging paragraph applies, we would have to look at the facts and say, hey, this really does amount to the same thing, the same kind of marriage fraud issue that was going on as the ground for inadmissibility, right? I mean, that's your whole argument, that the hanging paragraph says, and everything else that's related to that kind of a problem, that kind of factual setup. That's the only way you get to where you get. That takes you past categorical into the facts to start making distinctions between kinds of conviction, right? It is. Maybe I'm not being clear enough, and I apologize. What I'm saying is that Mathis, when we're talking about categorical approach, we're talking about whether the person is removable or inadmissible or not. What I'm saying is 237A1H, the waiver, is we're done with removability, we're on to relief. And it's our burden to demonstrate our clients are eligible for relief and obviously worthy of discretion. Okay. And if there's nothing more, Your Honor, thank you so much for this opportunity. Thank you. All right. Counsel, we appreciate the arguments we've heard today. We got the matter under advisement. We'll end our decision. We're in recess.